IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-03331-MSK-MJW

ROBERT D. GANDY,

Plaintiff,

v.

RICK RAEMISCH, Director, Colorado Department of Corrections, in his official capacity,
JERRY BARBER, Teacher II, Arkansas Valley Correctional Facility,
RICK MARTINEZ, Programs Manager, Arkansas Valley Correctional Facility, and
STEVE HARTLEY, Warden, Arkansas Valley Correctional Facility,

Defendants.

## RECOMMENDATION ON
## MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(B)(1) AND (6) AND/OR FOR SUMMARY JUDGMENT
### (Docket No. 25)

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case is before this court pursuant to an Order Referring Case (Docket No. 19) issued by Chief Judge Marcia S. Krieger on April 10, 2013.

**PLAINTIFF'S ALLEGATIONS**

*Pro se* incarcerated plaintiff Robert D. Gandy asserts the following in his Amended Prisoner Complaint (Docket No. 9). Plaintiff is a Canadian National currently incarcerated in the Colorado Department of Corrections ("CDOC"). Plaintiff asserts that the CDOC has wrongly refused to treat his telephone calls with the Canadian consulate as "privileged" and "unmonitored." Plaintiff contends that the CDOC treats his mail to and from the Canadian consulate as privileged, but refuses to extend the same

2

treatment to his telephone calls.

In addition, plaintiff alleges that on May 16, 2012, Defendant Barber yelled at plaintiff, waiving his finger in plaintiff's face, and made "wild accusations and threats." Plaintiff further alleges that specific comments made by Defendant Barber "could have placed plaintiff's life in jeopardy as the[y] were heard by other inmates." Defendant Barber further threatened to remove plaintiff from his work assignment. Plaintiff filed a grievance against Defendant Barber. Plaintiff alleges that on July 9, 2012, he was removed from the Arkansas Valley Correctional Facility in retaliation for filing the grievance.

Plaintiff makes four claims under 42 U.S.C. § 1983. Claim One alleges violations of plaintiff's First, Fourth, and Fourteenth Amendment rights, and a tort in violation of a United States Treaty pursuant to 28 U.S.C. § 1350, in relation to plaintiff's telephone calls to the Canadian consulate.

Claim Two[1] alleges that Defendant Barber violated plaintiff's First and Fourteenth Amendment rights by retaliating against plaintiff for filing a grievance against Defendant Barber.

Claim Three alleges that Defendant Martinez violated plaintiff's First and Fourteenth Amendment rights by authorizing or approving plaintiff's transfer to another facility.

Claim Four alleges that Defendant Hartley violated plaintiff's First and Fourteenth Amendment rights by failing to exercise his supervisor authority in connection with

---

[1] Plaintiff's Claim Two is mistakenly labeled as "Claim One" on page five of plaintiff's Amended Complaint (Docket No. 9).

plaintiff's transfer to another facility.

**PENDING MOTION**

Now before the court for a report and recommendation is Defendants Harley and Martinez's[2] (hereinafter "defendants") Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(B)(1) and (6) and/or for Summary Judgment (Docket No. 25).

The court has carefully considered the Amended Prisoner Complaint (Docket No. 9), the motion to dismiss (Docket No. 25), plaintiff's response (Docket No. 32), and defendants' reply (Docket No. 38). In addition, the court has taken judicial notice of the court's file, and has considered the applicable Federal Rules of Civil Procedure and case law. The court now being fully informed makes the following findings of fact, conclusions of law, and recommendations.

Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of

---

[2] At the time the subject motion was filed, Defendants Clements and Barber had not yet been served. On July 12, 2013, the court granted plaintiff's motion to substitute Defendant Raemisch (in his official capacity) in place of Defendant Clements. A waiver of service (Docket No. 49) was filed for Defendant Raemisch on July 22, 2013. As of the date of this recommendation, no return of service has been filed for Defendant Barber.

4

his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Id. at 555 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Twombly, 550 U.S. at 570).

The Tenth Circuit Court of Appeals has held "that plausibility refers 'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012). The court has further "noted that '[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context.'" Id. The court thus "concluded the *Twombly/Iqbal* standard is 'a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.'" Id.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor. Morse v. Regents of the Univ. of Colo.,

5

154 F.3d 1124, 1126-27 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996). However, "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions' . . . ." Khalik, 671 F.3d at 1190 (quoting Ashcroft v. Iqbal, 556 U.S. 662 (2009)). "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." Id.

Plaintiff is proceeding pro se. The court, therefore, reviews his pleadings and other papers liberally and holds them to a less stringent standard than those drafted by attorneys. Trackwell v. United States Government, 472 F.3d 1242, 1243 (10th Cir. 2007). See Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (holding allegations of a pro se complaint to less stringent standards than formal pleadings drafted by lawyers). However, a pro se litigant's conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged or that a defendant has violated laws in ways that a plaintiff has not alleged. Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983). See Whitney v. New Mexico, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (stating a court may not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf); Drake v. City of Fort Collins, 927 F.2d 1156, 1159 (10th Cir. 1991) (stating a court may not construct arguments or theories for the plaintiff in the absence of any discussion of those issues). The plaintiff's pro se status does not entitle him to application of different

rules. Wells v. Krebs, 2010 WL 3521777, at *2 (D. Colo. Sept. 1, 2010).

## ANALYSIS

Among the arguments put forth by defendants in their motion to dismiss are the following: (1) defendants are immune from liability for monetary damages in their official capacities; (2) Claim One is barred by the applicable statute of limitations; and (3) plaintiff failed to exhaust his administrative remedies as to Claims Three and Four.

**1. Immunity of Defendants in Their Official Capacities**

First, the individual defendants argue that they are immune from liability for monetary damages in their official capacities.

"It is well established that under the Eleventh Amendment, sovereign immunity prohibits federal courts from entertaining suits against states brought by their own citizens or citizens of another state without their consent." Hunt v. Colo. Dep't of Corr., 271 F. App'x 778, 780 (10th Cir. 2008) (citation omitted). Furthermore, to state a claim for relief under 42 U.S.C. § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged depravation was committed by a *person* acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988) (emphasis added). State officials acting in their official capacities are not "persons" acting under color of state law for § 1983 purposes. McLaughlin v. Bd. of Trs. of State Colls. of Colo., 215 F.3d 1168, 1172 (10th Cir. 2000).

Accordingly, the court finds that plaintiff's claims should be dismissed against defendants to the extent plaintiff seeks money damages against defendants in their official capacities.

**2. Statute of Limitations**

Next, defendants argue that plaintiff's Claim One is barred by the application statute of limitations.

Section 1983 creates a cause of action for "the deprivation, under color of state law, of a citizen's rights, privileges, or immunities secured by the Constitution and the laws of the United States." Ledford v. Sullivan, 105 F.3d 354, 356 (7th Cir. 1997) (quotation marks and citations omitted). Under Tenth Circuit law, § 1983 suits are analogous to but distinct from tort claims, because they "ultimately rest on the Constitution, not on state (or federal) common law." Mondragon v. Thompson, 519 F.3d 1078, 1082 (10th Cir. 2008).

The statute of limitations for a § 1983 claim is dictated by the personal injury statute of limitations in the state in which the claim arose. Wallace v. Kato, 549 U.S. 384, 387 (2007). In Colorado, that period is two years. See C.R.S. § 13-80-102; Workman v. Jordan, 32 F.3d 475, 482 (10th Cir. 1994). The statute of limitations begins to run when the plaintiff knows or has reason to know of the injury that is the basis of the claim. Workman, 32 F.3d at 482.

This matter was commenced on December 21, 2012. As such, plaintiff's Claim One must have accrued no earlier than December 21, 2010. In plaintiff's Amended Prisoner Complaint, plaintiff asserts that "[s]ince 1996, Defendants have claimed that only those with attorney registration numbers can be deemed as privileged telephonic communications." Docket No. 9, at 3. Accordingly, plaintiff knew of the alleged injury at some time in 1996, and the applicable statute of limitations expired some time in 1998. Plaintiff's Claim One is therefore untimely.

8

Plaintiff argues that the statute of limitations applicable to Claim One is not the two year period pursuant to 42 U.S.C. § 1983, but the ten year period pursuant to 28 U.S.C. § 1350(2)(c). However, regardless of whether the applicable period is two years or ten years, the statute of limitations expired well prior to plaintiff filing his complaint.

In addition, plaintiff argues that he only became aware in June 2012 that the CDOC's policy violated the Supremacy Clause of the United States Constitution. However, a claim accrues when a plaintiff becomes aware of the *injury* that is the basis of the claim; the accrual of a claim does not rest on when a plaintiff becomes aware of the legal basis for the claim or when he becomes aware that his legal rights have been violated. See Coleman v. Morall, 64 Fed. Appx. 116, 119 (10th Cir. 2003); see also Robinson v. Younger, 2007 WL 2697621, at *8 (D. Colo. Sept.11, 2007) (cause of action accrues when the facts that would support it are or should be apparent, not when the plaintiff realizes that the facts support a legal claim) (discussing United States v. Kubrick, 444 U.S. 111 (1979), which found that the plaintiff's claim accrued on the date he learned he was injured even if he did not know that the alleged tortfeasor was negligent).

Accordingly, the court finds that plaintiff's Claim One should be dismissed in its entirety as it is barred by the applicable statute of limitations.

**3. Exhaustion of Administrative Remedies**

Defendants next argue that plaintiff did not properly exhaust his administrative remedies as to Claims Three and Four. Defendants rely on documents outside the pleading to support their argument. Because the court has considered these documents in its determination, the court must convert the subject motion into a motion

for summary judgment. See GFF Corp. v. Associated Wholesale Grocers, 130 F.3d 1381, 1384 (10th Cir. 1997).

Rule 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial." Robertson v. Bd. of Cnty. Comm'rs of the Cnty. of Morgan, 78 F. Supp.2d 1142, 1146 (D. Colo. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Mares v. ConAgra Poultry Co., 971 F.2d 492, 494 (10th Cir. 1992)). "Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried . . . . These facts may be shown 'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings by themselves.'" Southway v. Central Bank of Nigeria, 149 F. Supp. 2d 1268, 1273 (D. Colo. 2001), aff'd, 328 F.3d 1267 (10th Cir. 2003). However, "[i]n order to survive summary judgment, the content of the evidence that the nonmoving party points to must be *admissible*. The nonmoving party does not have to produce evidence in a form that would be admissible at trial, but the content or substance of the evidence must be admissible. Hearsay testimony that would be inadmissible at trial cannot be used to defeat a motion for summary judgment because a third party's description of a witness supposed testimony is not suitable grist for the

10

summary judgment mill." Adams v. Am. Guarantee & Liability Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000) (internal citations and quotations omitted).

"Summary judgment is also appropriate when the court concludes that no reasonable juror could find for the non-moving party based on the evidence presented in the motion and response." Southway, 149 F. Supp. 2d at 1273. "The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." Id. "Unsupported allegations without 'any significant probative evidence tending to support the complaint' are insufficient . . . as are conclusory assertions that factual disputes exist." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); quoting White v. York Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995)). "Evidence presented must be based on more than 'mere speculation, conjecture, or surmise' to defeat a motion for summary judgment." Id. at 1274. "Summary judgment should not enter if, viewing the evidence in a light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party." Id. at 1273.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires a prisoner to exhaust "such administrative remedies as are available" before suing over prison conditions. This exhaustion requirement "is mandatory, and the district court [is] not authorized to dispense with it." Beaudry v. Corr. Corp. of Am., 331 F.3d 1164, 1167 n.5 (10th Cir. 2003). Therefore, defendants do not waive the exhaustion defense by waiting to raise it, even on the eve of trial. Id.

Section "1997e(a)'s exhaustion requirement applies to all prisoners seeking

redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). "Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." Id. at 524 (citing Booth v. Churner, 532 U.S. 731, 741 (2001)). The Supreme Court has stated: "[W]e stress the point . . . that we will not read futility or other exceptions into [the PLRA's] statutory exhaustion requirement." Booth, 532 U.S. at 741 n.6. "In *Booth*, the Supreme Court explained that one of the purposes of the exhaustion requirement is to force an inmate to go through the administrative process which in turn might afford prison officials the opportunity to take some corrective action that would preclude litigation." Beaudry, 331 F.3d at 1167.

The "failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones v. Bock, 549 U.S. 199, 216 (2007). As an affirmative defense, "the burden of proof for the exhaustion of administrative remedies in a suit governed by the PLRA lies with the defendant." Roberts v. Barreras, 484 F.3d 1236, 1241 (10th Cir. 2007). "'[A] district court cannot dismiss the complaint without first giving the inmate an opportunity to address the issue' unless the complaint conclusively shows a failure to exhaust." Markovich v. Correct Care Solutions, 406 Fed. Appx. 264, 265 (10th Cir. 2010) (quoting Aquilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007)).

The court may take judicial notice of the Bureau of Prisons' ("BOP") administrative process. See Ray v. Aztec Well Service Co., 748 F.2d 888, 889 (10th Cir.1984) (court can take judicial notice of agency rules and regulations); Antonelli v. Ralston, 609 F.2d 340, 341, n.1 (8th Cir.1979) (judicial notice taken of Bureau of

12

Prisons' Program Statement). The BOP has a four-step administrative process that provides for review at the institutional, regional and national levels "through which inmates may seek formal review of an issue which relates to any aspect of their confinement [with exceptions not pertinent to this case], if less formal procedures have not resolved the matter." 28 C.F.R. § 542.10–542.18. "[A]n inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." 28 C.F.R. § 542.13(a). Following informal attempts to resolve a complaint, the procedure requires that an inmate submit to the Warden "a formal written Administrative Remedy Request, on the appropriate form (BP–9), 20 calendar days following the date on which the basis for the Request occurred." 28 C.F.R. § 542.14(a). The Warden must respond within 20 calendar days from the date the formal request is received and logged into the Bureau's Administrative Remedy Index. 28 C.F.R. § 542.18. If the 20–day period is insufficient to make an appropriate decision, the deadline may be extended once for 20 days, unless the request is determined to be an emergency that threatens the inmate's immediate health or welfare, in which case the Warden must respond no later than the third calendar day after filing. Id.

If unsatisfied with the Warden's response, the inmate may file "an Appeal on the appropriate form (BP–10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). The Regional Director must respond within 30 days, which period may be extended once for 30 days. 28 C.F.R. § 542.18. If unsatisfied with the Regional Director's response, the prisoner "may submit an Appeal on the appropriate form (BP–11) to the General Counsel within

30 calendar days of the date the Regional Director signed the response." 28 C.F.R. § 542.15(a). The General Counsel must respond within 40 days, which period may be extended once for 20 days. 28 C.F.R. § 542.18. At any stage of the process, "[i]If the inmate does not receive a response within the time allotted for reply, . . . the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18. The appeal to the General Counsel at the Central Office constitutes the final administrative appeal. 28 C.F.R. § 542.15(a). An inmate may not raise issues in an appeal that were not raised in the lower level filing. 28 C.F.R. § 542.15(b)(2).

Defendants identify two grievance numbers assigned to the series of grievances filed by plaintiff regrading the injuries complained of in Claims Three and Four. Plaintiff does not dispute that these two grievance numbers represent the entirety of his efforts to exhaust his administrative remedies as to Claims Three and Four.

As to the first grievance number, R-FF 12/13-26092, Anthony DeCesaro, a Step 3 Grievance Officer for the CDOC, indicates in his affidavit that plaintiff filed his Step 1 grievance on or about July 17, 2012. Docket No. 25-1, para. 14. Mr. DeCesaro further indicates that plaintiff filed Step 2 and Step 3 grievances wherein he requested "reasonable compensation" for the alleged violations. Id., at para. 15. Mr. DeCesaro denied plaintiff's Step 3 grievance because plaintiff "requested relief that the Administrative Regulations explicitly state is not available." Id., at para. 16. Specifically, AR 850-04 states that remedies seeking staff reprimands, damages for pain and suffering, and exemplary and punitive damages are not available. Id.

Defendants argue that plaintiff failed to exhaust his administrative remedies as to grievance number R-FF 12/13-26092 because of the denial of plaintiff's Step 3

14

grievance due to plaintiff's failure to follow CDOC's procedures and requirements, i.e., plaintiff sought remedies which were unavailable pursuant to AR 850-04.

In response, plaintiff argues that his grievance was not requesting staff discipline or reprimand. Plaintiff further argues that his request for "compensation" is vague and open to interpretation. Plaintiff suggests there are non-monetary definitions for the term.

The court finds that plaintiff failed to exhaust his administrative remedies as to grievance number R-FF 12/13-26092. In each of his steps, plaintiff requested "reasonable compensation." Docket No. 25-1, pages 34-36. Although plaintiff suggests there are non-monetary definitions for "compensation," he does not specifically explain what non-monetary definition he intended the term to represent. Regardless, any reasonable interpretation of "compensation" in these circumstances necessarily involves a request for monetary damages of some kind. See Black's Law Dictionary (9th ed. 2009) (defining "compensation" as "[p]ayment of damages," and "damages" as "[m]oney claimed by . . . a person as compensation for loss or injury"). As outlined in AR 850-04, damages are not available as relief for a grievance. Further, as pointed out by defendants, plaintiff could have requested that he be returned the privileges and job placement he held prior to the alleged act of retaliation, however plaintiff instead chose to seek "reasonable compensation." As such, the court finds that there are no genuine disputes as to material facts showing that plaintiff failed to exhaust his administrative remedies as to grievance number R-FF 12/13-26092 by virtue of his request for relief which is unavailable under CDOC procedures and requirements. See Inman v. Stock, No. 05-cv-02290-LTB-PAC, 2007 WL 840868, at *3 (D. Colo. Mar. 16, 2007) (finding the

plaintiff failed to exhaust his administrative remedies because he failed to request allowable relief).

As to the second grievance number at issue, R-AV 11/12-21876, Mr. DeCesaro states that plaintiff filed his Step 1 grievance on or about May 21, 2012. Docket No. 25-1, para. 18. In his Step 1 grievance, plaintiff requested 1) an apology from Defendant Barber in front of everyone who witnessed the alleged inappropriate conduct, 2) a directive to Defendant Barber that he not attempt to retaliate against Plaintiff or anyone else who witnessed the incident about which he complained, and 3) that a supervisory staff member be present during any further conversations between Defendant Barber and plaintiff. Id.

Mr. DeCesaro states that plaintiff filed a Step 2 grievance which referenced a meeting between plaintiff, Defendant Barber, and Defendant Martinez to discuss the incident in question. Id., at para. 20. Plaintiff further alleged in his Step 2 grievance that he had been removed from his work assignment and transferred to a new facility. Id. Plaintiff requested that he be transferred back to the Arkansas Valley Correctional Facility, returned to his work program, or that he be provided an explanation as to why he was removed from the work program and transferred. Id. Plaintiff filed a Step 3 grievance wherein he made the same allegations and requests for relief as in his Step 2 grievance.

On August 16, 2012, Mr. DeCesaro informed plaintiff that plaintiff had not exhausted his administrative remedies as to grievance number R-AV 11/12-21876. Id., at para. 22. Mr. DeCesaro informed plaintiff that the Step 1 grievance was not consistent with the Step 2 and Step 3 grievances because plaintiff added new

16

substantive allegations and sought different relief. Id. Mr. DeCesaro stated that such changes are prohibited by the provisions of AR 850-04. Id., at para. 23.

Defendants argue that plaintiff failed to exhaust his administrative remedies as to grievance number R-AV 11/12-21876 because of the denial of plaintiff's Step 3 grievance due to plaintiff's failure to follow CDOC's procedures and requirements, i.e., plaintiff changed the substance of his grievance which is prohibited by AR 850-04. Plaintiff did not respond to defendants' argument regarding grievance number R-AV 11/12-21876 and did not dispute any of the facts as presented in Mr. DeCesaro's affidavit.

The court finds that plaintiff failed to exhaust his administrative remedies as to grievance number R-AV 11/12-21876. Plaintiff plainly added additional allegations and requests for relief in his Step 2 grievance. See Docket No. 25-1, pages 30-32. AR 850-04 states that a "substantive issue or remedy may not be added at a later step if it has not been contained in each previous step of that particular grievance." As such, the court finds that there are no genuine disputes as to material facts showing that plaintiff failed to exhaust his administrative remedies as to grievance number R-AV 11/12-21876 by virtue of his adding allegations and requests for relief to his Step 2 grievance.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that Defendants Harley and Martinez's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(B)(1) and (6) and/or for Summary Judgment (Docket No. 25) be **GRANTED** insofar as all of plaintiff's claims should be dismissed against defendants to the extent plaintiff seeks money damages against defendants in their official capacities, and Claims One, Three, and Four should be dismissed with prejudice

for the reasons set forth above.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. <u>Makin v. Colo. Dep't of Corr.</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date: August 21, 2013                s/ Michael J. Watanabe
      Denver, Colorado                Michael J. Watanabe
                                               United States Magistrate Judge