**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

Civil Action No. 12-cv-03331-MSK-MJW

**ROBERT D. GANDY,**

     **Plaintiff,**

**v.**

**RICK RAEMISCH, Director, Colorado Department of Corrections;
JERRY BARBER, Teacher II, Arkansas Valley Correctional Facility;
RICK MARTINEZ, Programs Manager, Arkansas Valley Correctional Facility; and
STEVE HARTLEY, Warden, Arkansas Valley Correctional Facility,**

     **Defendants.**

---

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
MOTIONS TO DISMISS**

---

     **THIS MATTER** comes before the Court on the Magistrate Judge's Recommendation (**#56**) to grant the Motion to Dismiss and/or for Summary Judgment (**#25**) filed by Mr. Hartley and Mr. Martinez.  Plaintiff Robert Gandy filed timely Objections (**#60**).

     Also before the Court is the Magistrate Judge's Recommendation (**#68**) to grant in part the Motion to Dismiss (**#63**) filed by Mr. Raemisch.  Mr. Raemisch filed timely Objections (**#70**).

## I.  ISSUES PRESENTED

     Mr. Gandy, an inmate in the custody of the Colorado Department of Corrections ("CDOC"), brings this action pursuant to 42 U.S.C. § 1983.  Mr. Gandy challenges the constitutionality of a CDOC regulation that allows inmates to make privileged phone calls only

to licensed attorneys.  He also asserts that three prison officials retaliated against him for filing a grievance about a prison employee's conduct.

## II.  FACTS

Mr. Gandy's *pro se*[1] Amended Complaint (**#9**) alleges the following facts.

Mr. Gandy is a Canadian National incarcerated by the CDOC.  He frequently communicates with the Canadian Consulate ("Consulate") via both mail and telephone.  The CDOC treats mail between Mr. Gandy and the Consulate as "legal mail," such that "outgoing mail is not read and incoming mail from the Consulate is opened in [Mr. Gandy's] presence in the same manner as mail from an attorney or the courts."   Mr. Gandy requested that the CDOC also treat his telephone calls to the Consulate as "privileged" and "unmonitored."  However, "[s]ince 1996, Defendants have claimed that only those with an attorney registration numbers can be deemed as privileged telephonic communications."  Mr. Gandy asserts that he "often request[s] that the Consulate address many prison issues where [a] policy or [an] individual staff member is violating [his] Constitutional rights."  He also alleges that "[a]t certain times, [he] feels the need for expediency and therefore would benefit from using the telephone to communicate with his governmental representative at the consulate."

Mr. Gandy's remaining three claims relate to a grievance Mr. Gandy filed against Mr. Barber, a teacher at the Arkansas Valley Correction Facility ("AVCF"). On May 16, 2012, Mr. Gandy was having a conversation with his work supervisor, another inmate, and Mr. Barber.  At

---

[1] The Court is mindful of Mr. Meek's *pro se* status, and accordingly, reads his pleadings and filings liberally.  *See Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594 (1972); *see also Trackwell v. United States Govt,* 472 F.3d 1242, 1243 (10th Cir. 2007).  However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).  A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *See Gallagher v. Shelton,* 587 F.3d 1063, 1067 (10th Cir. 2009).

some point during the conversation, Mr. Barber "started yelling at [Mr. Gandy], waiving his finger in [his] face, making wild accusations and threats, and stating that he, Mr. Barber, would have [Mr. Gandy] removed from his work assignment and the facility."

Mr. Gandy filed a grievance related to Mr. Barber's conduct on May 21, 2012.  Mr. Gandy met with Mr. Barber and Mr. Martinez—Mr. Barber's direct supervisor—on June 27, 2012 to discuss his grievance.  Mr. Gandy alleges that Mr. Barber and Mr. Martinez "did not wish to address the claim that [Mr.] Barber threatened to have [Mr.] Gandy removed from the apprenticeship program and the facility."

On July 9, 2012, Mr. Gandy was transferred from the AVCF, which Mr. Gandy believes was done in retaliation for the grievance he filed against Mr. Barber.

### III. PROCEDURAL BACKGROUND

The Amended Complaint asserts four claims for relief.  Claim One alleges that CDOC's refusal to permit unmonitored phone calls between Mr. Gandy and the Consulate violates the Vienna Convention on Consular Relations and Optional Protocol on Disputes ("Vienna Convention").[2]  The remaining three claims allege that Mr. Barber, Mr. Martinez, and Mr. Hartley, respectively, violated Mr. Gandy's First Amendment right to free speech and right to petition the government by transferring him from AVCF in retaliation for filing a grievance against Mr. Barber.

Mr. Hartley and Mr. Martinez[3] filed a "Motion to Dismiss and/or for Summary Judgment"[4] arguing that: (1) they are immune from suit to the extent they are sued in their

---

[2]      As noted below, there is some dispute between the parties as to the source of a remedy for such alleged violations.

[3]      It does not appear that service of process has been effected on Mr. Barber, as he is apparently no longer employed by CDOC.

official capacities; (2) Mr. Gandy's first claim is barred by the statute of limitations because he knew of, and was affected by, the CDOC's policy as early as 1996; (3) the Vienna Convention claim fails to state a cognizable claim; (4) Mr. Gandy fails to allege facts showing that Mr. Hartley and Mr. Martinez personally participated in any acts giving rise to the Vienna Convention claim;[5] (5) Mr. Hartley and Mr. Martinez are entitled to qualified immunity with regard to any colorable Vienna Convention claim, as the contours of their liability for such a deprivation was not clearly established; (6) Mr. Gandy did not properly exhaust his retaliation claim against Mr. Hartley and Mr. Martinez; (7) Mr. Gandy fails to allege Mr. Hartley's personal participation in the retaliation claim against him; and (8) Mr. Gandy cannot recover compensatory damages because he does not allege a physical injury.

Separately, Mr. Raemisch filed a Motion to Dismiss the claims against him. He adopted the arguments raised by Mr. Martinez and Mr. Hartley, and raised the additional argument that Mr. Gandy has no private right of action to redress an alleged violation of the Vienna Convention.

The Court referred both motions to dismiss to the Magistrate Judge for a recommendation. On August 21, 2013, the Magistrate Judge recommended that Mr. Hartley and Mr. Martinez's motion be granted and that all claims against them be dismissed. Specifically,

---

[4]      This Court strongly discourages such hybrid motions. The applicable standard of review for motions to dismiss and motions for summary judgment are sharply different, as is the scope of the record that the Court may consider for each type of motion. The submission of a motion that fails to clearly and conspicuously delineate between those arguments for which a motion to dismiss analysis is warranted, and those arguments for which a summary judgment analysis is appropriate, improperly foists off onto the court counsel's job of correctly identifying the nature of each argument.

[5]      Mr. Gandy concedes that the Vienna Convention claim is not asserted against Mr. Hartley and Mr. Martinez. He indicates that the claim is asserted only against Mr. Raemisch in his official capacity.

the Magistrate Judge concluded that: (1) defendants are immune from suit to the extent they are sued in their official capacities; (2) Mr. Gandy's first claim is barred by the statute of limitations because the claim accrued in 1996; and (3) Mr. Gandy failed to exhaust his administrative remedies for his Claim Three against Mr. Martinez and Claim Four against Mr. Hartley because he did not comply with the CDOC's procedural requirements.

On October 19, 2013, the Magistrate Judge recommended that Mr. Raemisch's motion be granted based on the conclusion in the prior Recommendation that Mr. Gandy's claim invoking the Vienna Convention be dismissed as untimely. Citing "reasons of judicial economy," the Magistrate Judge refused to consider Mr. Raemisch's alternative argument that Mr. Gandy lacked a private right of action under the Vienna Convention.

Mr. Raemisch filed a timely Objection to the Recommendation on Mr. Hartley and Mr. Martinez's motion, objecting to the Magistrate Judge's conclusion that his Vienna Convention claim was untimely, and the conclusion that he failed to exhaust the administrative grievance procedure applicable to his retaliation claim. Mr. Raemisch filed timely Objections to the Recommendation with regard to his motion, arguing that the Court should consider his argument that Mr. Gandy does not have private right of action under the Vienna Convention.

## IV. STANDARD OF REVIEW

When a magistrate judge issues a recommendation on a dispositive motion, the parties may file specific, written objections within fourteen days after being served with a copy of the recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The district court reviews *de novo* determination those portions of the recommendation to which a timely and specific objection is made. *See U.S. v. One Parcel of Real Prop. Known as 2121 E. 30th St.,* 73 F.3d 1057, 1060 (10th Cir. 1996).

Mr. Raemisch's challenge to Mr. Gandy's Vienna Convention claim takes the form of a motion to dismiss for failure to state a claim.  In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-plead allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party.  *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).  The Court must limit its consideration to the four corners of the Complaint, any documents attached thereto, and any external documents that are referenced in the Complaint and whose accuracy is not in dispute. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

A claim is subject to dismissal if it fails to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  To make such an assessment, the Court first discards those averments in the Complaint that are merely legal conclusions or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 1949-50.  The Court takes the remaining, well-pled factual contentions, treats them as true, and ascertains whether those facts support a claim that is "plausible" or whether the claim being asserted is merely "conceivable" or "possible" under the facts alleged.  *Id.* at 1950-51.  What is required to reach the level of "plausibility" varies from context to context, but generally, allegations that are "so general that they encompass a wide swath of conduct, much of it innocent," will not be sufficient. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

As explained below, Mr. Hartley and Mr. Martinez's request for dismissal of the claims against them on the grounds that Mr. Gandy failed to exhaust his administrative remedies

invokes an affirmative defense requiring an evidentiary presentation.  As such, it is evaluated as a summary judgment motion pursuant to Fed. R. Civ. P. 56.  Summary judgment is appropriate when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a).  A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial.  *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence.  *See* Fed.R.Civ.P. 56(c)(1)(A).  Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute.  *See Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward,* 199 F.3d 1126, 1131 (10th Cir. 1999).  If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

## V.  ANALYSIS

Mr. Gandy objects to the Magistrate's Recommendations that Claim One is barred by the statute of limitations and Mr. Gandy failed to exhaust administrative remedies for Claims Three and Four.  Accordingly, the Court reviews those portions of the Recommendation de novo.

### A.  Claim One

There is some dispute between the parties about the precise provenance of Mr. Gandy's Vienna Convention claim.

The United States entered into the Vienna Convention on Consular Relations in 1969. 21 U.S.T. 77. In general, the treaty requires that a foreign national arrested in the United States be permitted to have contact with and request the assistance of his country's consulate. *Garcia v. Texas*, 131 S.Ct. 2866, 2868-69 (2011) (Breyer, J. dissenting). Although Mr. Gandy references Article 35 of the Convention – which generally provides that "consular bags" used by the foreign state to for effecting communication be "inviolable" – the more provisions more pertinent to his claim appear to be those of Article 36. Section 1(a) of that article provides that "consular officers shall be free to communicate with nationals of the [foreign] state and to have access to them." Section 1(b) provides that the United States shall inform the foreign state's consulate of any foreign national that is arrested or imprisoned in the United States, and that "any communication addressed to the consular post by the person arrested . . .shall be forwarded by [U.S. government officials] without delay." Section 2 of the article provides that the rights expressed in the article "shall be exercised in conformity with the laws and regulations of the receiving state, subject to" the requirement that "said laws and regulations must enable full effect to be given to the purposes for which rights accorded under this Article are intended."

Mr. Raemisch has challenged the timeliness of any claim by Mr. Gandy under the Vienna Convention, and the parties have disagreed about which statute creates such a claim (and thus, defines the limitations period to be observed). Mr. Gandy contends that his claim arises under the Alien Tort Claims Act, 28 U.S.C. § 1350, which grants jurisdiction to federal courts over "any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." Claims under this statute are subject to a 10-year statute of

limitations.  *See Van Tu v. Koster*, 364 F.3d 1196, 1199 (10th Cir. 2004).  Mr. Raemisch, on the

other hand, views Mr. Gandy's Vienna Convention claim as being brought under 42 U.S.C. §

1983, which grants a remedy to any person subjected to "the deprivation of any rights, privileges,

or immunities secured by the Constitution and laws" of the United States by a state actor.

Claims under § 1983 in Colorado are subject to a two-year statute of limitations.  *Fogle v.

Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006).  The Magistrate Judge appeared to adopt Mr.

Raemisch's contention, but ultimately concluded that Mr. Gandy's Vienna Convention claim

was untimely under either statute.

     This Court finds it somewhat difficult to attempt to apply a statute of limitations –

including assessing tricky questions of accrual – without first clearly ascertaining the precise

nature and scope of the underlying claim.  This task is complicated somewhat by profound

questions about the extent to which the Vienna Convention is enforceable by private parties in

the United States, and in this respect, the Court finds merit in Mr. Raemisch's Objections to the

Magistrate Judge declining to consider the threshold question of whether Mr. Gandy even has a

private right of action under the Vienna Convention before concluding that such a claim is

untimely.

     Mr. Raemisch's motion cites to a variety of cases for the general proposition that "it

remains an open question whether the Vienna Convention gives rise to any individually

enforceable rights."  *See U.S. v. Minjares-Alvarez*, 264 F.3d 980, 986 (10th Cir. 2001).  He goes

on to argue that "the Supreme Court has not resolved this issue." *Citing U.S. v. Jorge Villa-

Ortega*, 2005 WL 3018687 (D. Kan. Nov. 9, 2005).   Those statements may have been correct at

the time of *Villa-Ortega*, but the Supreme Court has since clarified the matter significantly.[6]

---

[6]    The Court notes that none of the cases cited by Mr. Raemisch regarding the private
enforcement of treaty obligations were decided after 2005.

In *Medellin v. Texas*, 552 U.S. 491 (2008), the Supreme Court considered the *habeas* petition of a Mexican national, one of 51 persons who had been arrested and convicted in the United States who had not been granted the consular access required by Article 36 of the Vienna Convention. These 51 nationals had brought a claim before the International Court of Justice ("ICJ") in the Hague,[7] and successfully obtained a ruling that the United States had violated the Vienna Convention and that the foreign nationals "were entitled to a review and reconsideration of their state-court convictions and sentences" without regard to state-imposed procedural default rules. *Id.* at 497-98. Mr. Medellin then sought *habeas* relief in Texas, but both the state and federal courts refused, finding that "the Vienna Convention did not confer individually enforceable rights." *Id.* at 503.

Reviewing the matter, the Supreme Court began with the Mr. Medellin's contention that the ICJ's ruling constituted a "binding obligation on the state and federal courts of the United States." *Id.* at 504. It conceded that the Vienna Convention "constitutes an international law obligation on the part of the United States" but went on to explain that "not all international law obligations automatically constitute binding federal law enforceable in United States courts." *Id.* It distinguished between international treaties that are "self-executing" – that is, which "automatically have effect as domestic law" – and treaties which are not – that is, those which require "legislation to carry them into effect." *Id.* at 504-05 & n. 2. After extensive analysis, the Court concluded that the Vienna Convention was non-self-executing, and thus, "the particular treaty obligations on which Medellin relies" – Article 36 of the Convention – "do not of their own force create domestic law." *Id.* at 520. (The Court then proceeded to conclude that a 2005 Presidential Memorandum directing that "the United States will discharge its international

---

[7]     At the time, the U.S. was a signatory to an Optional Protocol to the Vienna Convention that required signatory states to agree to have disputes over the application of the convention determined by the ICJ. Since 2005, the U.S. has repudiated that protocol.

obligations under the [ICJ's decision] by having state courts give effect to the decision" was similarly non-binding in the absence of Congressional action.  *Id.* at 523-26.)

Although *Medellin* may be distinguishable in some peripheral aspects, its central message is clear: the Vienna Convention does not create any domestic legal obligations in the United States in the absence of specific Congressional enactments providing for such.  Mr. Gandy does not identify any specific Congressional action that has formally sought to convert the United States' international obligations under the Convention into domestically-enforceable rights.  *See e.g. Korbr v. Bundesrepublik Deutschland*, 739 F.3d 1009 (7th Cir. 2014) ("the United States and [another Convention signatory] made promises to each other, not directly to private citizens. Decisions such as *Medellín* . . . show that private parties can be the intended beneficiaries of treaties without having a right to enforce them in court").  In the absence of such Congressional action, this Court is compelled to conclude that Mr. Gandy (or any other foreign national alleging a violation of the Convention by state or federal authorities) lacks any judicial remedy for such violation. [8]

In the absence of any colorable judicial remedy for an alleged violation of the Convention, the question of timeliness becomes irrelevant.  Accordingly, the Court adopts the Magistrate Judge's recommendation that Mr. Raemisch's motion to dismiss the Vienna Convention claim be granted, albeit for different reasons.

### B.  Claims Three and Four

---

[8]     This Court does not construe the Alien Tort Claims Act, a highly-generalized statute that predates the Vienna Convention, to be the type of specific Congressional action necessary under *Medellin* to convert the Vienna Convention's provisions into domestic law.  *See e.g. Gordon v. City of New York*, 2012 WL 1067694 (E.D.N.Y. Mar. 29, 2012) (unpublished) (rejecting both § 1983 and Alien Tort Claims Act claims for alleged violation of Article 36; "virtually non of the States-parties to the [Convention] have recognized a tort cause of action premised on consular notification and access rights"), *citing Mora v. New York*, 524 F.3d 183, 188 n. 5 (2d Cir. 2008).

Mr. Gandy alleges that he was transferred from the AVCF in retaliation for exercising his First Amendment right to file a grievance complaining about Mr. Barber's behavior. Mr. Gandy asserts separate claims against Mr. Martinez (Claim Three) and Mr. Hartley (Claim Four). Mr. Martinez and Mr. Hartley move to dismiss these claims, arguing that Mr. Gandy failed to exhaust available administrative remedies. In addition, Mr. Hartley argues that Mr. Gandy failed to state claim against him because Mr. Gandy failed to allege that Mr. Hartley personally participated in any retaliatory conduct.

### 1. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), requires a prisoner to exhaust available administrative remedies before bringing an action related to prison conditions. Failure to satisfy the exhaustion requirement is an affirmative defense that a defendant must plead and prove. *Jones v. Bock,* 549 U.S. 199, 216, 127 S.Ct. 910 (2007). To properly exhaust administrative remedies, a prisoner must "complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock,* 549 U.S. 199, 218, 127 S.Ct. 910 (2007). Substantial compliance with procedural rules is not sufficient. *Fields v. Oklahoma State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007). A prisoner must first exhaust administrative remedies, "[e]ven when the prisoner seeks relief not available in grievance proceedings." *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 988 (2002).

The general operation of the CDOC's three-step grievance process are undisputed. The inmate first files a grievance that is investigated and answered by the CDOC employee or official involved and a separate CDOC designee; if the grievance remains unresolved, the inmate may file a second-step grievance that is investigated and considered by the appropriate local

administrative official; if the inmate still remains aggrieved, he may file a third-step grievance that is considered by CDOC's Grievance Officer.  Completion of the third step is necessary to completely exhaust the procedure.  *See generally Snyder v. Harris*, 406 Fed.Appx. 313, 315 (10th Cir. 2011).

The Grievance Officer can deny a grievance on either substantive or procedural grounds. If denied substantively, the officer "shall certify in the response that the offender has exhausted the grievance process."  However, the grievance officer need not address the substantive issues if the grievance is procedurally defective because it "is incomplete, inconsistent with a former step, incomprehensible, illegible, requests relief that is not available, fails to request relief, or in any other way fails to comply with the provisions of this regulation."  If the grievance officer denies a grievance for procedural error, the "officer shall certify in the response that the offender has not exhausted the grievance process."  The grievance procedures may not be used to seek review of the step three grievance officer's decisions.

Here, Mr. Gandy invoked the grievance procedure twice with regard to Mr. Barber's alleged threat to remove him from his work assignment.  On May 21, 2012, Mr. Gandy filed a Step 1 grievance ("Grievance 21876"), reciting the allegation that Mr. Barber had threatened to remove Mr. Gandy's work assignment and transfer him from the facility, and requested relief in the form of: (i) an apology from Mr. Barber, (ii) a directive to Mr. Barber to refrain from retaliating against Mr. Gandy; and (iii) that another staff member be present for any discussions between Mr. Gandy and Mr. Barber in the future.  In response to the grievance, Mr. Martinez met with Mr. Barber and Mr. Gandy to discuss the incident.  After discussing the confrontation, Mr. Gandy and Mr. Barber both agreed that the discussion "was an emotionally charged one which should have been dealt with differently," and Mr. Barber apologized.  Mr. Martinez

reports that Mr. Gandy "agreed that . . . his concerns had been addressed and he agreed that this would resolve his grievance." On July 9, 2012, Mr. Gandy signed the report of the meeting prepared by Mr. Martinez containing the representation that Mr. Gandy agreed that the grievance had been resolved.

Mr. Gandy was apparently terminated from the work assignment and transferred out of AVCF that same day. On July 12, 2012, he filed another grievance, this time designated as a Step 2 grievance, complaining that, notwithstanding the meeting with Mr. Martinez, Mr. Barber's threat "was not addressed." He then recited that the termination from his work assignment and his transfer from AVCF "was in retaliation to my filing a grievance for unprofessional staff behavior." He requested that he be returned to AVCF and restored to his work assignment, or, alternatively, that he be given "an exact explanation as to why I was removed from the apprenticeship program and AVCF."

That grievance was answered by Daryl Vigil. He observed that Mr. Gandy had agreed with Mr. Martinez that his Step 1 grievance had been resolved, stated that the termination of Mr. Gandy's work assignment was "due to the elimination of para professional assignments in the new program," and stated that "the issue regarding your transfer . . . was a classification decision, therefore not grievable."

Mr. Gandy immediately filed a Step 3 grievance, stating that his initial meeting with Mr. Martinez had resolved two of the three complaints he had against Mr. Barber (apparently the request for an apology and a third party to be present when meeting with Mr. Barber), but had not resolved his concerns about Mr. Barber's threat to retaliate against Mr. Gandy by transfering him. Mr. Gandy's Step 3 grievance requested the same relief as his Step 2 grievance.

Anthony DeCesaro, CDOC's Grievance Officer, responded to the Step 3 grievance.  He concluded that Mr. Gandy's Step 2 and 3 grievances "are inconsistent with your Step 1 grievance," in that these later grievances added "a substantive issue or remedy" that was not present in the Step 1 grievance – namely, the fact that he had been transferred out of AVCF after the Step 1 grievance.  Mr. DeCesaro concluded that "you failed to follow the grievance procedure in this matter" and thus, "you have <u>not</u> exhausted your remedies."  (He also observed, without further explanation, that "the time constraints outlined in" the CDOC Administrative Regulation governing the grievance procedure "have also been violated.")

At the same time that the Grievance 21876 was working its way through the steps, Mr. Gandy filed a second grievance more specifically directed at his transfer.  On July 17, 2012, Mr. Gandy filed a Step 1 grievance ("Grievance # 26092") that recited the background of Mr. Barber's threat, the meeting with Mr. Martinez, and the fact that Mr. Gandy was subsequently transferred out of AVCF.  He stated that "moving me from AVCF is clearly an act of retaliation for my exercise of my First Amendment right to file grievances."  He requested "written acknowledgment of this retaliation and reasonable compensation for this flagrant disregard of my constitutional rights."

That Step 1 grievance was answered by Mr. Barber, who repeated that Mr. Gandy had expressed satisfaction with the resolution of his prior Step 1 grievance.   Separately, Mr. Barber noted that "in regard to your move, this was done by offender services who determines what facility an offender will be sent to.  Therefore, your grievance is denied."

Mr. Gandy promptly filed a Step 2 grievance repeating that he had only received partial satisfaction from the meeting with Mr. Martinez, noted that "the issue of Barber's threats" had not been dealt with at that meeting, and that at the time of that meeting, Mr. Barber and Mr.

Martinez "had already initiated my removal from the facility."  He requested the same relief

sought in the Step 1 grievance – acknowledgement of the retaliation and "reasonable

compensation."

The Step 2 grievance was answered by Mr. Martinez, who stated that "I am denying this

grievance on procedural grounds based on the fact that it duplicates an issue previously grieved"

in Grievance # 21876.

Mr. Gandy filed a timely Step 3 grievance, disputing that his Step 2 grievance duplicated

Grievance # 21876, explaining that "the gravamen of the grievances is different."  He explained

that Grievance # 21876was directed at "threats made to retaliate" and sought "to prevent such

retaliation."  Grievance # 26092, on the other hand, "addresses the fact that DOC staff carried

out their threats of retaliation."  He again requested the same relief from his Step 1 grievance.

Mr. DeCesaro responded to Mr. Gandy's Step 3 grievance, explaining that both items of

relief requested by Mr. Gandy – written acknowledgment of retaliation and compensation – were

expressly prohibited as available remedies by the CDOC Administrative Regulation governing

the grievance procedure.  Mr. DeCesaro concluded that "you have <u>not</u> exhausted your

administrative remedies in this matter based on your failure to satisfactorily request allowable

relief."

Before proceeding to consider the merits of the Defendants' contention that Mr. Gandy

failed to exhaust his administrative remedies with regard to his retaliation claim, it is necessary

to first clearly define the contours of that claim.  To establish a § 1983 claim premised upon First

Amendment retaliation, Mr. Gandy must allege: (i) that he engaged in constitutionally-protected

activity; (ii) that the Defendants took an adverse action against him; and (iii) that the adverse

action was substantially motivated as a response to Mr. Gandy's protected conduct.  *Shero v.*

*City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).   Although Mr. Gandy arguably describes two different adverse actions taken against him – Mr. Barber's initial threat to terminate his work assignment and transfer him, and the Defendants actually carrying out that threat by effecting his transfer from AVCF – only one of those actions followed <u>after</u> an act by Mr. Gandy that could be considered to be constitutionally-protected conduct.  Mr. Gandy's Amended Complaint explains that Mr. Barber's initial threat was made "for no rational reason," unprovoked by any prior action by Mr. Gandy.  By contract, Mr. Gandy asserts (and the Defendants do not dispute) that his filing of Grievance # 21876 against Mr. Barber was an act protected by the First Amendment.  Thus, since the only injury suffered by Mr. Gandy <u>after</u> engaging in protected conduct was his transfer out of AVCF on July 9, 2012 after having filed Grievance # 21876, it is the filing of that grievance and that transfer that animate the retaliation claim.

Viewed in that light, the Court discerns two separate problems with the Defendants' argument that Mr. Gandy failed to exhaust his administrative remedies.  Because the filing of Grievance # 21876 was the constitutionally-protected act that triggered the retaliation, Mr. Gandy's exhaustion (or not) of that grievance is irrelevant.  The Step 1 grievance predated the adverse action – transfer out of AVCF – that Mr. Gandy complains of, and since the CDOC grievance procedure prevents inmates from modifying or amending a grievance as it moves through the process, proper exhaustion of Grievance # 21876 could not have addressed Mr. Gandy's complaints about a transfer that had not yet occurred when Grievance # 21876 was initially filed.  Thus, by definition, the administrative exhaustion of the retaliation claim necessarily occurred, if at all, via Mr. Gandy's pursuit of Grievance # 26092.

Mr. Gandy received three distinct responses to the three steps of Grievance # 26092.  Mr. Barber's response at Step 1 was simply that the decision to move Mr. Gandy was made by the

Offender Services department and, therefore, the grievance was denied.   However, at Step 2, Mr. Martinez denied the grievance for a different reason: that it was duplicative of Grievance # 21876.   As discussed above, it is impossible for Grievance # 26092, which complained about Mr. Gandy's transfer, to be duplicative of Grievance # 21876, which was filed before that transfer occurred.   Admittedly, the events proceeding the transfer are the same events discussed in Grievance # 21876, but the transfer itself is the clear focus of Grievance # 26092, and thus, Mr. Martinez's response at Step 2 is simply erroneous.

Finally, at Step 3, Mr. DeCesaro offered an explanation that neither Mr. Barber nor Mr. Martinez had previously offered: that the relief requested by Mr. Gandy was not available under the CDOC grievance procedure.   Mr. DeCesaro's response appears to be at least factually-correct: the grievance procedure does indeed exclude non-economic damages and employee discipline as remedies that can be granted.   However, Mr. DeCesaro then concluded that because Mr. Gandy failed to request relief permitted under the grievance procedure, he had failed to adequately exhaust that procedure.   The Defendants do not cite any authority for the proposition that an inmate's request for relief that exceeds that available under the grievance procedure results in a failure to exhaust, and indeed, Supreme Court precedent establishes just the opposite. In *Booth v. Churner*, 532 U.S. 731 (2001), the Supreme Court explained that an inmate must nevertheless follow the prison's administrative remedy procedure even though the specific relief the inmate requested – there, money damages – was expressly unavailable though that procedure.[9]   The Supreme Court has since repeated that requirement in cases such as *Woodford*

---

[9]   Indeed, if the Defendants were correct that Mr. Gandy's seeking of relief that was unavailable under the grievance procedure rendered his grievance unexhausted, then by definition, the grievance procedure was not "available" to remedy Mr. Gandy's grievance.   In the absence of an alternative administrative procedure that offered that specific relief – and the Defendants identify none -- the only logical conclusion is that there is no administrative process for Mr. Gandy to seek his requested relief, and thus, nothing for Mr. Gandy to exhaust.

*v. Ngo*, 548 U.S. 81, 85 (2006) ("as we held in Booth, a prisoner must now exhaust administrative remedies even where the relief sought—monetary damages—cannot be granted by the administrative process,"), one of the cases on which the Defendants rely. If the unavailability of the requested remedy was sufficient to render a grievance unexhausted, the rule of *Booth* and *Woodford* would be irrelevant – it would be impossible to exhaust a grievance where the requested relief was not available.

Thus, while Mr. DeCesaro may be correct that Mr. Gandy's requested relief could not be afforded to him, he is incorrect in concluding that Mr. Gandy's requesting of unavailable relief rendered his grievance unexhausted. To the contrary, the record reflects that Mr. Gandy timely filed Grievance # 26092 as a challenge to his allegedly-retaliatory transfer out of AVCF, properly pursued that grievance through Steps 2 and 3, and thus, fully exhausted it. Accordingly, the Court declines to adopt the Magistrate Judge's recommendation that the claims against Mr. Hartley and Mr. Martinez be dismissed for failure to exhaust.

That leaves two issues raised in Mr. Hartley and Mr. Martinez's motion unresolved: Mr. Hartley moves to dismiss the retaliation claim against him, arguing that Mr. Gandy failed to adequately allege Mr. Hartley's personal participation in the retaliation, and both Defendants' argument that Mr. Gandy is unable to recover any compensatory damages on his retaliation claim pursuant to 42 U.S.C. § 1997e(e).

Turning first to the issue of Mr. Hartley's personal participation in the alleged retaliation, the Court notes that a defendant's direct personal participation in the acts giving rise to the alleged constitutional deprivation are a fundamental element of any § 1983 claim; there is no vicarious liability under § 1983. *See e.g. Sherratt v. Utah Dept. of Corrections*, 545 Fed.Appx. 744, 747 (10th Cir. 2013) (unpublished). Mr. Gandy's Amended Complaint explains that his

retaliation claim is asserted against Mr. Hartley because "on June 12, 2012, "the Canadian consulate wrote an official letter to Warden Hartley informing the warden that the filing of the grievance is constitutionally protected and that Plaintiff should not be retaliated against for exercising that protected right.  Warden Hartley failed to exercise his supervisor authority after he was informed by the Canadian consulate on the threats made to Plaintiff."

It is unclear whether Mr. Gandy's reference to June 12, 2012 is a typographical error, and that he actually means July 12, 2012 (a few days after Mr. Gandy's transfer out of AVCF), such that the Canadian consulate's letter raised a concern about the potential retaliatory effects of that transfer, or whether the Canadian consulate's letter indeed referenced only a concern about the threats made by Mr. Barber in May 2012 and Mr. Gandy's protected filing of Grievance # 21876.  In either event, the mere fact that Mr. Hartley received a letter from the Canadian consulate about Mr. Gandy either prior to or after his transfer is insufficient to demonstrate that Mr. Hartley personally participated in the decision to transfer Mr. Gandy in retaliation for his having filed a grievance.   Mr. Gandy appears to infer that Mr. Hartley bears responsibility for a transfer apparently effected by Mr. Martinez and Mr. Barber simply because Mr. Hartley "acquiesced" in allowing that transfer to proceed.  Although a supervisor's knowing acquiescence in a subordinate's constitutional violation is a type of personal participation, Mr. Gandy has not alleged any facts that would demonstrate that Mr. Hartley: (i) was even aware of Mr. Gandy's transfer; (ii) that he was aware that Mr. Martinez and Mr. Barber had orchestrated that transfer; or (iii) that Mr. Martinez and Mr. Barber had done so with retaliatory, rather than honest, motivations.  *See e.g. Starks v. Lewis*, 313 Fed.Appx. 163, 166-67 (10th Cir. 2009).  Without such allegations, Mr. Gandy's contention that Mr. Hartley personally participated in the

retaliation is no more than speculative conclusions, and thus, Mr. Hartley is entitled to dismissal of the retaliation claim against him due to failure to state a claim.

Finally, the Court turns to the question of whether Mr. Gandy is entitled to recover monetary damages for the alleged retaliation.  The PLRA provides that that inmate suits seeking compensation for solely mental or emotional distress are barred; compensatory monetary damages are available only for physical injuries.  42 U.S.C. § 1997e(e).  However, the prohibition against compensatory damages for non-physical injuries does not prevent suits seeking declaratory and injunctive relief (*e.g.* a request that Mr. Gandy be transferred back to AVCF). *Perkins v. Kansas Dept. of Corrections*, 165 F.3d 803, 808 (10th Cir. 1999).  Thus, the Court will treat Mr. Gandy's suit as one seeking only declaratory and injunctive relief.

## VI. CONCLUSION

For the foregoing reasons, Mr. Gandy's Objections **(# 60)** to the Magistrate Judge's Recommendation **(# 56)** are **SUSTAINED IN PART**.  The Court **ADOPTS IN PART** that Recommendation and **GRANTS IN PART** Mr. Hartley and Mr. Martinez's Motion to Dismiss and/or for Summary Judgment, insofar as the Court **DISMISSES** Mr. Gandy's Vienna Convention claim in its entirety and **DISMISSES** Mr. Gandy's retaliation claim as against Mr. Hartley.  Mr. Martinez and Mr. Hartley's motion is **DENIED IN PART**, insofar as the Court finds that Mr. Gandy adequately exhausted his retaliation claim against Mr. Martienz.  Mr. Raemisch's Objections **(# 70)** are **SUSTAINED**.  The Court **ADOPTS** the Magistrate Judge's Recommendation as to Mr. Raemisch, albeit on different grounds, and **GRANTS** Mr. Raemisch's Motion to Dismiss **(# 63)** the claims against him for failure to state a claim under Rule 12(b)(6). There being no claims remaining against Mr. Hartley or Mr. Raemisch, the

caption of this case is **DEEMED AMENDED** to omit reference to them.

Dated this 31st day of March, 2014.

BY THE COURT:

_Marcia S. Krieger_

Marcia S. Krieger
Chief United States District Judge